IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-00336-CNS

GURLAL SINGH,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the ICE Denver Contract Detention Facility,
ROBERT HAGAN, in his official capacity as Denver Field Office Director for U.S. Immigration and Customs Enforcement,
TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,
KRISTI NOEM, in her official capacity as Secretary of Department of Homeland Security, and
PAMELA BONDI, in her official capacity as Attorney General of the United States,

     Respondents.

---

## ORDER

---

Before the Court is Petitioner Gurlal Singh's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. ECF No. 1. As the briefing demonstrates that Petitioner's now all too familiar challenge to Respondents' authority under § 1225(b)(2) is fundamentally legal in nature, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243, and, for the reasons outlined below, the Court GRANTS the petition and ORDERS Respondents to immediately release Petitioner from immigration detention. In doing so, the Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 11.

The petition arises from Petitioner's civil immigration detention by Immigration Customs Enforcement (ICE), where "[Petitioner] is being held without the possibility of bond at the Denver Contract Detention Facility in Aurora, Colorado" pursuant to 8 U.S.C. § 1225(b)(2). ECF No. 1 ¶ 1. Petitioner challenges his detention under 28 U.S.C. § 2241, *id.* ¶ 12, and requests that the Court issue "a writ of habeas corpus requiring his immediate release, or in the alternative, [ordering] a bond hearing under § 1226(a), at which Respondents bear the burden to demonstrate by clear and convincing evidence that his continued detention is warranted," *id.* ¶ 9. Petitioner also requests that the Court enjoin Respondents "from imposing any conditions of release, including but not limited to a GPS ankle monitor, unless approved by an immigration judge at the bond hearing;" and "from re-detaining Petitioner without first affording him a pre-deprivation hearing before a neutral decisionmaker." *Id.* at 30.

Respondents filed a brief response opposing in principle Petitioner's requested relief,[1] but otherwise conceding that Petitioner's case "is not materially different from an issue this Court has resolved in prior rulings in similar cases," ECF No. 11 at 2 (citing *Hernandez v. Baltazar, et al.*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Rico v. Baltazar*, No. 1:25-cv-03943-CNS, 2025 WL 3640366 (D. Colo. Dec. 16, 2025)), and acknowledging that "this Court's prior rulings on this issue would lead the Court to reach the same result here if the Court adheres to those decisions, as the facts

---

[1] Respondents attached to their response "and incorporate[d] by reference, the legal arguments Respondents presented on this issue in *Mendoza Gutierrez v. Baltazar*, No. 25-cv-02720-RMR, ECF No. 26 at 10-19," "in order to conserve judicial and party resources." ECF No. 11 at 3. The Court notes that Respondents' submission of an additional 30-page brief (on top of its five-page response) does not help to conserve judicial resources and is otherwise unpersuasive for the same reasons explained herein.

of this case are not materially distinguishable from those cases for purposes of the Court's decision on the legal issue of whether Petitioner is subject to mandatory detention under § 1225(b)(2)," *id.* at 3.[2] The Court agrees.

Indeed, like in *Hernandez*, Petitioner here has resided in the United States for over two years, ECF No. 1 ¶ 17, and "was not arriving at a border or port of entry when he was detained" on January 13, 2026, *id.* ¶¶ 26, 77. And, also like in *Hernandez*, Petitioner is being held in civil immigration detention and denied the opportunity for a bond hearing based on the government's assertion that, despite his long-term residence in the United States, Petitioner is an "applicant for admission" to the United States and must therefore be subject to mandatory detention under either 8 U.S.C. § 1225. *Se* ECF No. 11 at 2–3. The Court thus adopts its prior reasoning in full here, *see Hernandez*, 2025 WL 2996643, at *2; *see also Espinoza Ruiz*, 2025 WL 3294762, at *2, and once more joins the chorus of courts in this district and around the nation that have overwhelmingly rejected Respondents' position.[3] To the extent the Fifth Circuit recently reached a contrary opinion, that decision is discussed further below.

---

[2] On January 29, 2026, the Court issued an Order directing Respondents to "respond to the . . . Petition" within "three calendar days of service" and "order[ing Respondents] to show cause as to why the Petition should not be granted." ECF No. 6. Respondents were served on January 31, 2026, ECF No. 7 at 1, and an attorney subsequently filed an Entry of Appearance on behalf of all Respondents on February 2, 2026, ECF No. 8 at 1. Despite this, Respondents did not file their response until February 6, 2026. *See* ECF No. 11. Respondents' failure to file a timely response to the Court's order to show cause can result in a waiver of any challenge to the petition. *See, e.g.*, *Chambers v. Klinefelter*, No. 1:23-cv-00502, 2023 WL 5729219, at *2 n.2 (M.D. Pa. Sept. 5, 2023) ("failure to file a timely response to [a] habeas corpus petition constitutes a waiver"). Nevertheless, the Court considered the arguments in Respondents response and is unpersuaded.

[3] *See e.g.*, *Arenas v. Noem*, No. 1:26-cv-00024-SBP, 2026 WL 317562 (D. Colo. Feb. 5, 2026); *Hernandez-Redondo v. Bondi*, No. 25-cv-03993-PAB, 2026 WL 290989 (D. Colo. Feb. 4, 2026); *Concha-Gonzales v. Noem*, No. 1:26-cv-00001-CNS, 2026 WL 194178 (D. Colo. Jan. 26, 2026); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470, at *1 (D. Colo. Jan. 13, 2026); *Rico v. Baltazar*, No. 1:25-cv-03943-CNS, 2025 WL 3640366 (D. Colo. Dec. 16, 2025); *Valera v. Baltazar*, No. 1:25-CV-03744-CNS, 2025 WL

However, unlike in *Hernandez*, the Court is not persuaded that ordering a § 1226 bond hearing is the appropriate remedy here given the particular facts of Petitioner's case. Specifically, after Petitioner "fled political persecution in India and entered the United States without inspection on or about May 30, 2023," ECF No. 1 ¶ 1, he was arrested by immigration officials, placed in removal proceedings, and then released by the Department of Homeland Security (DHS) on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226 on May 31, 2023. *See id.* ¶ 24; ECF No. 1-1. In the years following his release, Petitioner represents that he "has followed all the requirements of his release, including appearing at immigration hearings[;] has worked legally pursuant to an employment authorization[;] and has built a life for himself." ECF No. 1 ¶ 1. Petitioner has a pending application for relief via asylum, withholding of removal and the Convention Against Torture. *Id.* ¶ 2.

Petitioner contends that because DHS invoked 8 U.S.C. § 1226 to release him on an Order of Release on Recognizance in 2023, ECF No. 1-1, immigration officials have

---

3496174 (D. Colo. Dec. 5, 2025); *Espinoza Ruiz v. Baltazar*, No. 1:25-cv-03642-CNS, 2025 WL 3294762 (D. Colo. Nov. 26, 2025); *Arauz v. Baltazar*, No. 1:25-cv-03260-CNS, 2025 WL 3041840 (D. Colo. Oct. 31, 2025); *Hernandez v. Baltazar, et al.*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Hernandez Vazquez v. Baltasar, et al.*, No. 1:25-cv-3049-GPG, ECF No. 22 (D. Colo. Oct. 23, 2025); *Loa Caballero v. Baltazar, et al.*, No. 1:25-cv-3120-NYW, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291, at *1 (D. Colo. Oct. 20, 2025); *Mendoza Gutierrez v. Baltasar, et al.*, No. 1:25-cv-2720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Carrillo Fernandez*, 2025 WL 3485800; *Garcia-Arauz v. Noem*, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); *Escobar Salgado v. Mattos*, No. 2:25-cv-01872-RFB-EJY, --- F. Supp. 3d ----, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); *Ramos v. Rokosky*, No. 25cv15892 (EP), 2025 WL 3063588 (D.N.J. Nov. 3, 2025); *Godinez-Lopez v. Ladwig*, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Romero v. Hyde*, Civil Action No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 795 F.Supp.3d 475 (S.D.N.Y. Aug. 13, 2025).

already determined that Petitioner is not a flight risk or danger to the community, as required by 8 U.S.C. § 1226(a), and as a result, the Court should now order his immediate release. ECF No. 1 ¶¶ 65–66 (citing *Singh v. Bondi*, No. 1:25-v-02101-SEB-TAB, 2025 WL 3029524, at *5 (S.D. Ind. Oct. 30, 2025)). Petitioner's argument is persuasive. The 2023 Order of Release on Recognizance specifically states that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act (INA)," which refers to 8 U.S.C. § 1226. ECF No. 1-1. Indeed, if "[Petitioner] was deemed an applicant for admission by virtue of his entry into the United States, the government was statutorily obligated to detain him under § 1225(b) at the time he was initially apprehended. It did not do so. Instead, [Petitioner] was released on his own recognizance . . . based expressly on § 1226," which was "the *only* basis cited for [Petitioner's] release." *Singh*, 2025 WL 3029524, at *5; ECF No. 1-1 at 1 (Petitioner's May 31, 2023 Order of Release on Recognizance).[4]

As Petitioner notes, the decision to release Petitioner pursuant to 8 U.S.C. § 1226, means that immigration officials have already determined that Petitioner is neither a flight risk nor a danger to the community. ECF No. 1 ¶ 1. Indeed, Petitioner represents that he has no criminal record, *id.* ¶ 28, and states that since being released, he "has followed all the requirements of his release, including appearing at immigration hearings[,]" *id.* ¶ 1.

---

[4] *See also Singh*, 2025 WL 3029524, at *5–6 ("Under § 1225, the government's options were limited to removal or detention pending review by an asylum officer. The fact that the government's release of [Petitioner], on his own recognizance, was based on § 1226 is strong evidence that he currently remains subject to § 1226, rather than § 1225. The facts of [Petitioner's] redetention make clear that his custody is based on § 1226," because a noncitizen "'cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.'" (citing *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025)).

Moreover, while released on bond, Petitioner received work authorization to pursue lawful employment in the United States from the same agencies that now seek his continued, unlawful detention. *See Id.* ¶ 1. In such circumstances, where Respondents have already determined that it is proper to release Petitioner under § 1226, the Court sees no reason to prolong Petitioner's detention now. *See, e.g.*, *Valera v. Baltazar*, No. 1:25-cv-03744-CNS, 2025 WL 3496174, at *3 (D. Colo. Dec. 5, 2025) (ordering noncitizen's immediate release where Respondents have already determined that the noncitizen is neither a flight risk nor a danger to the community).

Finally, the Court addresses a recent Fifth Circuit opinion that addressed the fundamental issue that Petitioner presents here: The propriety of § 1225's application. *See Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026). For two reasons, *Buenrostro-Mendez* does not compel a contrary outcome to the one the Court reaches.

*First*, the Court is not bound by it. The Court is bound only by decisions from the United States Supreme Court and the Tenth Circuit. Absent guidance from either, *Buenrostro-Mendez* is at most persuasive—and certainly not binding. *See, e.g, United States v. Ramos*, 194 F. Supp. 3d 1134, 1170 n.7 (D.N.M. 2016), *aff'd*, 723 F. App'x 632 (10th Cir. 2018). The Court further notes that, as a general matter, while federal appellate courts are cautious to create circuit splits, *see, e.g., Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 810 (10th Cir. 2020) (en banc), this is not a circumstance where "so many circuits would be lined up" against the Tenth Circuit in resolving whether § 1225 or § 1226 apples in this case, *id.* (citation modified). *See also Iron Bar Holdings,*

*LLC v. Cape*, 131 F.4th 1153, 1171 (10th Cir.), *cert. denied*, 146 S. Ct. 327 (2025) ("Ultimately the decisions of one circuit are *not binding* on other circuits." (emphasis added)). And, because the Tenth Circuit has not addressed this issue, the Court, in reaching a conclusion contrary to *Buenrostro-Mendez*, is well within its institutional bounds, as in doing so it is *not* resolving a circuit split, because at this time one does not exist between the Fifth and Tenth Circuits. *Cf. United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990).

*Second*, and somewhat relatedly, as the dissent in *Buenrostro-Mendez* noted, the Seventh Circuit *has* expressed disagreement with the *Buenrostro-Mendez* majority's take. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("[I]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so." (citing § 1225(a)(1)). So the Court is right back where it otherwise would have started: Looking at competing persuasive authorities, and determining by whom it is persuaded. The answer is the Seventh Circuit and the overwhelming number of district court orders that have rejected the reasoning upon which the *Buenrostro-Mendez* majority relied. *See* 2026 WL 323330, at *16 ("[A]s the vast majority of district courts and the only court of appeals to address this issue have recognized, the principles of statutory interpretation go firmly the other way.") (Douglas, J., dissenting).

Start with the *Buenrostro-Mendez* majority's interpretation of § 1225. After explaining § 1225 contemplates mandatory detention, *see id.* at *4, and reciting the descriptive principle that a "proper reading begins with the ordinary meaning of the language" in § 1225(b)(2)(A), the majority reaches—relying upon the reasoning of a district court—the conclusion that "[t]here is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." 2026 WL 323330, at *4 (quoting *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, --- F.Supp.3d ----, ----, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)). Certainly, the English language, like others, contains synonyms. But this conclusion proceeds explicitly from the premise that these words—"applying" and "seeking"—in this statutory context lack a "material disjunction." 2026 WL 323330, at *4. That's wrong, as the *Buenrostro-Mendez* dissent observes, and the majority's supporting example of a college applicant fails to persuade the Court that it must re-think its approach to the plain language of § 1225. *Compare id.*, *with, e.g, id.* at *12 ("[A] variation in terms suggests a variation in meaning." (citation modified)); *and Castanon-Nava*, 161 F.4th at 1061; *and de Jesus Aguilar v. Eng.*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, at *8 (N.D. Ind. Nov. 25, 2025) ("One cannot easily call [petitioner's] seeking—that is, trying to gain— mere entry into the United States when he already has been in this country for 19 years (since 2006)."); *and Romero v. Hyde*, 795 F. Supp. 3d 271, 283–84 (D. Mass. 2025).

Regardless, the use of such hypothetical—a student applying to college—to shore up the majority's interpretation cannot run interference for the underlying infirmity of its statutory interpretation. *See, e.g., Rio Grande Found. v. Oliver*, 154 F.4th 1213, 1221

(10th Cir. 2025) ("We do not conjure up whether or not there is a hypothetical situation in which application of the law might be valid."). Instead, the Court must faithfully adhere to the bedrock principle to which the majority pays lip service but actually disregards: that statutory terms are given their plain and ordinary meaning. *See, e.g. United States v. Deleon*, 116 F.4th 1260, 1270 (11th Cir. 2024) ("'[O]rdinary meaning' is *the* foundational rule for the evaluation of legal texts." (original emphasis) (citation modified)) (Newsom, J., concurring). And application of this principle, as the *Buenrostro-Mendez* dissent observes, demands giving all words "independent force," meaning in this case that "seeking admission" as a statutory phrase "refers to noncitizens seeking entry into the United States—and chimes with the statutory definition of 'admission' as 'lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Buenrostro-Mendez*, 2026 WL 323330, at *12 (citation modified) (Douglas, J., dissenting); *see also id.* ("The ordinary meaning of 'seek' requires some present, active action on the seeker's part.").

The majority itself acknowledge its position—concluding basically that "applying" and "seeking" are synonyms—would create redundancies in the controlling statutory provisions. *See id.* at *5. But this is no problem, the majority reasons, because "[t]he Supreme Court has observed that 'redundancies' are common in statutory drafting." *Id.* (citation modified). Careful reading of the authorities upon which the majority relies in reaching this conclusion is required. Flip, for instance, from *Barton*, 590 U.S. 222, 239 (2020), cited by the majority, to the case *Barton* cited in support of its own reasoning, *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019). *Rimini Street* took a much more

cautious approach to accepting statutory "redundancies": "If one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute." *Id.* at 346. And while "[s]ometimes the better overall reading of [a] statute" does contain some redundancy, *id.*, *Rimini Street* was clear that "[r]edundancy is not a silver bullet," *id.* And so *even if* the Court went along with the *Buenrostro-Mendez* majority's equation of "seeking" and "applying" in the first place—and it doesn't—the United States Supreme Court has made clear this should not be any dispositive factor in any court's statutory analysis. *See id.* ("*Sometimes* the better overall reading of the statute contains some redundancy." (emphasis added)).

Regardless, as explained above the better reading of the statute contains *no* redundancy at all—demanding no need to resort to asking, as a fallback, whether "redundant surplusage" is something the Court should overlook here, or whether § 1225 is one such "common" statute that contains redundant terms. *Barton v. Barr*, 590 U.S. 222, 239 (2020). Especially where, even putting aside the majority's faulty *ordinary meaning* analysis, the Court agrees with the dissent and other district courts that the statute *itself* provides "material disjunctions," 2026 WL 323330, at *4, that compel the Court to arrive right back where it started: that mandatory detention, as a factual matter and textual matter, under § 1225 is wrong. *See de Jesus Aguilar*, 2025 WL 3280219, at *7 (explaining "[o]ne cannot merely look at 'applicant' as necessarily meaning that the alien has sought admission as that term might otherwise presuppose, though in the usual sense an 'applicant' usually has sought permission for something [and that] [d]oing so

would break apart the term of art—'applicant for admission'—that has been plainly defined by the statute and gloss the singular word 'applicant' with a meaning that Congress expressly never intended" (citation modified)). The Court is prohibited from "break[ing] apart" any statutory provision, *id.*, and declines to disregard this instruction simply because a divided panel in a different judicial circuit reached an unpersuasive conclusion to the contrary. *See also Fedorenko v. United States,* 449 U.S. 490, 514 (1981) ("It is not the function of the courts to amend statutes under the guise of 'statutory interpretation.' (citation modified)); *Buenrostro-Mendez*, 2026 WL 323330, at *13 ("The government's reading therefore violates the canon against interpreting any statutory provision in a manner that would render another provision superfluous, which of course, applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." (citation modified)) (Douglas, J., dissenting).

At last, the Court turns, as it and other courts have previously, to *Jennings*, and asks whether the *Buenrostro-Mendez* majority's reading of that case upends the Court's own interpretation. *Cf. id.* at *7 (observing that *Jennings* did not opine on the difference between detention authority under § 1225 and § 1226," chiding petitioners for citing "dicta," and reasoning the *Jennings* language does not refute the government's interpretation" (citation modified)). The majority decries courts' engagement with *Jennings*'s language, now—unlike its willingness a few pages ago, to go along with some general principles as to whether reading statutory provisions as redundant are permissible—on the grounds that Supreme Court opinions should not be "language-pars[ed]" like a statute. *Id.* (citation modified). But the Court, respectfully, declines to adopt

the majority's characterization of district courts' critical thinking and thoroughness as undue language-parsing—particularly where doing so is a requirement of its limited institutional role in this branch of government. *See, e.g. Nation v. San Juan Cnty*., 150 F. Supp. 3d 1253, 1266 (D. Utah 2015), *aff'd sub nom. Navajo Nation v. San Juan Cnty*., 929 F.3d 1270 (10th Cir. 2019) ("[T]his court has a solemn duty to *faithfully identify and apply* binding precedent from the Supreme Court and the Tenth Circuit Court of Appeals." (emphasis added)). And in adhering to this duty, the Court can "draw from" *Jennings, id.*, a guiding principle: "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under §§ 1226(a) and (c)." 583 U.S. 281, 289 (2018); *see also Espinoza Ruiz v. Baltazar*, No. 1:25-CV-03642-CNS, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025); *Buenrostro-Mendez*, 2026 WL 323330, at *14 (citing same language from *Jennings* and observing that "[t]he government and the majority essentially argue that this is dicta, but we are bound by the Supreme Court's explications of law, whether dicta or not" (citation modified)) (Douglas, J., dissenting).

*Buenrostro-Mendez'*s divided panel proceeds to analyze concerns beyond the relevant statutory language—for instance, the government's past practices. *Id.* at *7. The Court declines to do so, as doing so is unnecessary to the conclusion it reaches. "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020); *Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 813 (10th Cir. 2025) ("If it is not

12

necessary to decide more, it is necessary not to decide more." (citation modified)). At

bottom, "[l]anguage provides many avenues to fully and clearly express an idea." *Takwi*

*v. Garland*, 22 F.4th 1180, 1187 (10th Cir. 2022). And Congress, in considering the

relevant statutory language, clearly expressed that § 1225 shouldn't apply here. *See, e.g.*

*Buenrostro-Mendez*, 2026 WL 323330, at *13 (Douglas, J., dissenting).

* * *

Accordingly, consistent with the foregoing analysis and based on the Court's

review of the filings and documents before the Court, pursuant to the Court's authority

under 28 U.S.C. § 2241(c)(3), IT IS HEREBY ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241,
   ECF No. 1, is GRANTED; and

2. Respondents shall release Petitioner from custody immediately, but no later
   than within 12 hours of this Order, and may not impose any additional
   conditions of release or supervision not previously imposed by DHS in
   connection with Petitioner's 2023 Order of Release on Recognizance; and

3. Respondents shall file a status report within TWO DAYS of this order to certify
   compliance; and

4. Respondents are further ENJOINED AND RESTRAINED from re-detaining
   Petitioner unless they demonstrate, by clear and convincing evidence at a pre-
   deprivation bond hearing, that Petitioner is a flight risk or danger to the
   community such that his physical custody is legally justified. At any such bond
   hearing, the government shall bear the burden of proof.

DATED this 9th day of February 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge